BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
proach&bholaw.com

BERMAN & RIEDEL, LLP
WILLIAM A. BERMAN (190078)
ALICIA M. SIMINOU (279954)
12264 El Camino Real, Suite 300
San Diego, CA 92130
Tel: 858/350-8855
858/350-9855 (fax)
wberman@bermanlawyers.com
asiminou@bermanlawyers.com

WILLIAMS, KASTNER
 & GIBBS, PLLC
JOHN A. KNOX
DOUGLAS A. HOFMANN
601 Union Street, Suite 4100
Seattle, WA 98101
Tel: 206/628-6600
206/628-6611 (fax)
jknox@williamskastner.com
dhofmann@williamskastner.com

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH A. HUNTZINGER, on Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>AQUA LUNG AMERICA, INC.,<br><br>        Defendant. | Case No: **'15CV1146 WQHKSC**<br><br>**CLASS ACTION**<br><br>CLASS ACTION COMPLAINT FOR:<br>1.  VIOLATION OF CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE §1750 *et seq.*;<br>2.  VIOLATION OF THE UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE §17200 *et seq.*; and<br>3.  BREACH OF IMPLIED WARRANTY<br><br>**DEMAND FOR JURY TRIAL** |

BLOOD HURST & O'REARDON, LLP

00082275

Case No.
CLASS ACTION COMPLAINT

1  Plaintiff Ralph A. Huntzinger brings this action on behalf of himself and
2  all others similarly situated against defendant Aqua Lung America, Inc. ("Aqua
3  Lung") and states:

**NATURE OF ACTION**

4  
5  1.  Plaintiff and other consumers purchased Suunto-branded dive
6  computers, including the Suunto Cobra, Suunto Cobra 2, Suunto Cobra 3, Suunto
7  Cobra 3 Black, Suunto Vyper, Suunto Vyper 2, Suunto Vyper Air, Suunto
8  HelO2, Suunto Gekko, Suunto Vytec, Suunto Vytec DS, Suunto D9tx, Suunto
9  D9, Suunto D6, Suunto D6i, Suunto D4i, Suunto D4, and Suunto Zoop
10 (collectively, "Dive Computers"), that were marketed and distributed by Aqua
11 Lung, Suunto's exclusive United States distributor.  Aqua Lung distributes the
12 Dive Computers to dive stores all over the United States for resale, and also
13 markets the Dive Computers directly to consumers.  Aqua Lung is also one of
14 five Suunto-authorized repair facilities in the United States that repairs the Dive
15 Computers.

16 2.  The Dive Computers are devices used by scuba divers to provide
17 information critical to the diver's safety, including information about the depth
18 of the dive, the dive time, water temperature, safety stops, stop depths and time
19 for required decompression, air tank pressure, and estimated remaining air time.
20 An inaccurate display of this information can result in serious injury or death to
21 the diver.  Plaintiff and other consumers purchased the Dive Computers
22 expecting them to function properly as a dive computer and display accurate
23 information.

24 3.  Each of the Dive Computers marketed and distributed by defendant
25 contains materially the same software and hardware that operates the Dive
26 Computer's critical functions.  However, the software and/or hardware in the
27 Dive Computers is defective because it can malfunction, causing the Dive
28 Computers to provide inaccurate information about a dive.

BLOOD HURST & O'REARDON, LLP

Case No.
CLASS ACTION COMPLAINT
00082275

4.     Defendant, as an authorized repair facility for the Dive Computers, is acutely aware of the defective software and/or hardware in the Dive Computers.  In fact, the defect is so well known to defendant that when a Dive Computer comes in for repair due to malfunction, defendant's only attempt at repair is to replace the battery.  If the Dive Computer continues to malfunction with a new battery, and it is still under warranty, the Dive Computer is replaced with a new Dive Computer because the defective software/hardware cannot be repaired.  However, the replacement Dive Computers also contain the defective software and/or hardware.  This leaves consumers feeling as if they have fully repaired and functioning Dive Computers, when in reality the new Dive Computers suffer from the same defect and can similarly malfunction during a dive.

5.     Despite knowing about these dangers, defendant does not warn consumers, or even the Consumer Product Safety Commission ("CPSC"), of the defects existing in the Dive Computers.  Instead, defendant continues to expressly and impliedly represent that the Dive Computers are well-designed, properly manufactured, and safe for their intended use.

6.     As a result of defendant's omissions regarding the safety of the Dive Computers and their defective software and/or hardware, plaintiff and the proposed class have purchased a product which is dangerous and does not function as advertised.

7.     Plaintiff brings this action, on behalf of himself and other similarly situated consumers who have purchased a Dive Computer to obtain redress and to require defendant to properly inform consumers of the potential dangers associated with using the Dive Computers.  Based on violations of state unfair competition laws and defendant's omissions and misrepresentations, plaintiff seeks injunctive and monetary relief for consumers who purchased the Dive Computers.  Plaintiff has suffered injury in fact and lost money or property in the

BLOOD HURST & O'REARDON, LLP

00082275

1   form of purchasing the Dive Computer as a result of defendant's alleged unfair

2   business practices.

3   **JURISDICTION AND VENUE**

4   8. This Court has original jurisdiction pursuant to 28 U.S.C.

5   § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds

6   the sum or value of $5,000,000 and is a class action in which there are in excess

7   of 100 class members and many members of the class are citizens of a state

8   different from defendant.

9   9. This Court has personal jurisdiction over defendant because it is

10   authorized to conduct business and does conduct business in California.

11   Defendant has marketed, promoted, and distributed the Dive Computers in

12   California and has sufficient minimum contacts with this State and/or has

13   sufficiently availed itself of the markets in this State through its promotion,

14   distribution, and marketing to render the exercise of jurisdiction by this Court

15   permissible. Defendant also has its headquarters in California.

16   10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and

17   (b) because a substantial part of the events or omissions giving rise to the claim

18   occurred because plaintiff purchased the Dive Computer in this judicial district.

19   Venue is also proper under 18 U.S.C. § 1965(a) because defendant transacts

20   substantial business in this District and is headquartered in this district.

21   **PARTIES**

22   11. Plaintiff Ralph A. Huntzinger resides in San Diego, California. On

23   or about May 14, 2013, plaintiff purchased a Suunto Cobra 3 dive computer from

24   leisurepro.com for $699.95. Plaintiff purchased and used the Suunto Cobra 3

25   dive computer believing it was safe to use during scuba dives, when in fact the

26   Suunto Cobra 3 was defective, resulting in an inaccurate display of dive related

27   information. Had plaintiff known that the Suunto Cobra 3 was unsafe and unfit

28   for its intended use, he would not have purchased or used it. Plaintiff suffered

BLOOD HURST & O'REARDON, LLP

3   Case No.

**CLASS ACTION COMPLAINT**

1  injury in fact and lost money or property as a result of defendant's unfair

2  business practice.  Plaintiff does not seek to recover for personal injury damages

3  for himself or on behalf of class members.

4  12.    Defendant Aqua Lung America, Inc. is a Delaware corporation with

5  its headquarters in Vista, California.  Aqua Lung is in the business of distributing

6  and marketing scuba diving products, including the Dive Computers.  Aqua Lung

7  marketed, and distributed the Dive Computers to thousands of consumers in the

8  United States, including California.

9  **FACTUAL ALLEGATIONS**

10  13.    Aqua Lung is the oldest dive equipment manufacturer in the United

11  States.  For over 60 years, Aqua Lung has manufactured or distributed scuba

12  diving equipment, including masks, fins, breathing devices, regulators, and dive

13  computers.  In addition to manufacturing and distributing Aqua Lung-branded

14  dive products, Aqua Lung also distributes and services products manufactured by

15  other companies.

16  14.    Aqua Lung is the exclusive United States distributor for Suunto-

17  branded dive computers, including the Dive Computers at issue and is a Suunto

18  authorized repair facility for the Dive Computers.  The Dive Computers retail for

19  between approximately $300 and $1,050 each.

20  15.    The Dive Computers are devices used by underwater divers to

21  measure various aspects of a dive critical to the safety of the diver.  During the

22  descent in an underwater dive, as the water pressure outside the body increases,

23  nitrogen gas from breathing air is absorbed into the body.  The deeper the dive,

24  the faster nitrogen dissolves into the body.  Although this usually is not harmful,

25  the problem arises when a diver ascends or surfaces and the nitrogen releases.  In

26  order to properly release the nitrogen slowly from the body, a diver must ascend

27  slowly and carry out necessary decompression stops to allow the body to adjust.

28

BLOOD HURST & O'REARDON, LLP

00082275

4     Case No.
CLASS ACTION COMPLAINT

16.    If a diver ascends or surfaces too quickly to allow diffusion of the nitrogen, nitrogen gas bubbles will form in the body tissue, resulting in decompression sickness otherwise known as the "bends".   Decompression sickness can lead to headaches, joint pain, numbness, paralysis, nitrogen narcosis, and even death.

17.    The Dive Computers are a critical instrument to assist divers in avoiding decompression sickness.  The Dive Computers are used to track the depth and time of the dive and calculate theoretical and actual time and depth limits the diver should stay within to avoid decompression sickness.  Inaccurate information regarding depth and dive time can lead to serious injury or death to the diver.

18.    In addition to dive depth and time for purposes of avoiding decompression sickness, the Dive Computers also display other critical information such as, water temperature (which can affect the likelihood of decompression sickness), air tank pressure, and estimated remaining air time.  A misreading of any of this information can also lead to serious injury or death.

19.    The only reason to purchase a Dive Computer is to have knowledge of the critical information regarding a dive.  If the Dive Computer cannot reliably provide that information, it is worthless.

20.    Aqua Lung advertises the Dive Computers as having the ability to provide critical information regarding a dive such as, dive depths, air pressure, and remaining air time.  For example, on its website Aqua Lung states:

"Suunto Cobra3 enables continuous decompression for optimal ascent time."

"Suunto Cobra3 monitors and displays your tank pressure, tracks your rate of air consumption, and continuously calculates your remaining air time.  It also provides visual and audible alarms for depth and pressure and warns you when you're running low on air."

"Suunto Cobra monitors and displays your tank pressure, tracks your

CLASS ACTION COMPLAINT

BLOOD HURST & O'REARDON, LLP

rate of consumption, and continuously calculates your remaining air time."

"Suunto Cobra enables continuous decompression for optimal ascent time."

For the Suunto Viper Air, "[t]ank pressure is displayed both numerically and graphically, and an estimation of the remaining air time is given throughout the dive.  This allows you to monitor remaining air supply at the same time as you monitor depth and time."

"Suunto Vyper enables continuous decompression for optimal ascent time."

21.   However, the Dive Computers are defective and prone to malfunction, resulting in the Dive Computers providing inaccurate information regarding dive depth, dive time, air pressure, and remaining air time.

22.   Aqua Lung, as the distributor and an authorized repair facility for the Dive Computers, knew or should have known that the Dive Computers were failing and defective and knew or should have known that the failing and defective Dive Computers created a life threatening risk of harm to consumers.

23.   Aqua Lung repair representatives are trained by Suunto on how to repair the Dive Computers.  Aqua Lung receives Dive Computers for repair directly from consumers and through dive shops where consumers bring their Dive Computers.

24.   Since as at least 2005, Aqua Lung has received Dive Computers for repair from consumers who experienced permanent malfunction of the dive computer due to the defective software and/or hardware.  When a permanent malfunction occurs, the Dive Computers report incorrect depths, "self-dive" or indicate that a dive is occurring when no dive is in fact occurring, report incorrect air time remaining, and/or report incorrect air tank pressure.  All of these malfunctions are the result of defective software and/or hardware in the Dive Computers.

Case No.
CLASS ACTION COMPLAINT

00082275

BLOOD HURST & O'REARDON, LLP

25.     Several online message boards related to scuba diving catalog the manifestations of the common defect. On one message board, www.scubaboard.com, a consumer complains that his Dive Computer has an error code and he inquires about how to get rid of the error. A person referring to himself as "Chris from Suunto" replies, "The 'permanent' error mode that was spoke of in the post…is due to a computer malfunction within the pressure sensor circuit. The computer thinks it is continuously diving and [displays] erroneous depths for hours on end. If this error occurs there is no way to clear it from the computer. The fault will stay within the memory in the computer even after the battery is removed. This is an unrepairable fault and the unit would need to be replaced."[1]  Numerous similar complaints have been made by consumers regarding the Dive Computers.

26.     There has been at least one reported death as a result of a defective Dive Computer malfunctioning during a dive. On December 10, 2010, off the island of Lanai in Hawaii, Pamela Seigman was diving with a brand new (never before used) Suunto Cobra 2 Dive Computer. During Ms. Seigman's second dive of the day, unbeknownst to Ms. Seigman or anyone else on the dive, her Dive Computer malfunctioned and failed to display the correct pressure remaining in her air tank and failed to sound alarms that the manual states the computer will provide. The Dive Computer reported substantial air remaining in Ms. Seigman's air tank when, in reality, she was out of air. Ms. Seigman died from asphyxia due to salt water drowning. The Coast Guard investigation of Ms. Seigman's death concluded that she died as a result of "equipment failure." During subsequent testing of Ms. Seigman's Dive Computer by Aqua Lung, the Dive Computer malfunctioned and displayed an "ER 1" code, indicating that the Dive Computer was defective and unrepairable.

---

[1]     http://www.scubaboard.com/forums/archive/index.php/t-437067.html

**CLASS ACTION COMPLAINT**

BLOOD HURST & O'REARDON, LLP

00082275

27.    As the distributor and authorized repair provider of the Dive Computers, and a dive equipment manufacturer for over 60 years, Aqua Lung knows that the safe and reliable operation of the Dive Computers is an important concern to consumers.  Likewise, as the distributor and authorized repairer of the Dive Computers, defendant is in the superior position to know about actual and potential risks and dangers with the Dive Computers.  This knowledge places Aqua Lung in a superior position, relative to consumers, to receive, collect, and respond to relevant issues about the performance and/or defective characteristics of the Dive Computers.

28.    Despite having knowledge that the Dive Computers all contain the inherent defects, malfunction, and pose a significant hazard to consumers, defendant does not inform consumers or the CPSC of these facts.  Indeed, defendant has never issued a recall of the Dive Computers or otherwise notified consumers that the Dive Computers contain a defect in the software and/or hardware that can result in inaccurate readings of critical information during a dive.

29.    Instead, Aqua Lung continues to cover up the defect and consumers who use the Dive Computers are left using dangerous and defective products.  When Aqua Lung receives a Dive Computer that has suffered a permanent malfunction as described above, it is Aqua Lung's practice to not conduct any repairs.  That is because, when the Dive Computer has malfunctioned permanently as a result of the defective software and/or hardware it is unrepairable.

30.    If the Dive Computer is outside of warranty, Aqua Lung simply tells the customer that there is no repair.

31.    If the Dive Computer is within the product warranty, it is Aqua Lung's practice to replace the defective Dive Computer with a new Dive Computer.  In fact, the computer defect is so prevalent that the ordinary two-year

BLOOD HURST & O'REARDON, LLP

warranty for the Dive Computers was extended to five years for problems related to self-diving, incorrect depth readings, tank pressure, and temperature, and other improper operations.  However, Aqua Lung did not inform the public it extended the warranty to deal with the defective Dive Computers.

32.    Additionally, the replacement Dive Computers do not provide any relief because they suffer from the same hardware and/or software defect.  When a customer receives a replacement Dive Computer in lieu of a repair, that customer reasonably believes that the new Dive Computer will not suffer from the same dangerous defect.  However, because all of the Dive Computers contain substantially the same software and/or hardware, the defect exists in all of them, including the replacements.

33.    None of the warnings on the product packaging or in other marketing informed plaintiff or other consumers that because of the Dive Computers' inherent defect in the software and/or hardware, ordinary use of the Dive Computers carries a substantial risk of serious malfunction whereby the Dive Computer may quit working and/or provide incorrect information about a dive.  Instead of properly warning consumers of the hazards posed by using the Dive Computers as intended, Aqua Lung continues to falsely represent that the Dive Computers will provide certain accurate information during a dive and impliedly that the Dive Computers are safe for use.

34.    As a result of Aqua Lung's omissions and representations, plaintiff and the class members have been deceived into purchasing and continuing to use the inherently defective, unsafe, and unreliable Dive Computers that have caused plaintiff and the class members to suffer injury and lose money or property.

35.    Defendant advertised the Dive Computers as a safe product and failed to warn consumers that the Dive Computers are defective, and may malfunction and cause serious bodily harm or death during intended use. Plaintiff and class members purchased and used the Dive Computers reasonably

BLOOD HURST & O'REARDON, LLP

believing that the product was safe for its intended use.

36.   The inherent defect was a material fact, as the defect caused safety concerns and unreasonable risk of injury, and plaintiff would not have purchased or used the Dive Computer had he known that the product was defective and could malfunction and cause serious bodily harm or death.

37.   Defendant's omissions and misrepresentations were a material factor in influencing plaintiff's decision to purchase the Dive Computer and defendant reaped, and continues to reap, large profits from its deceptive marketing, distribution, and repair of the Dive Computers.

38.   Defendant's remedy for some consumers of providing a replacement Dive Computer is insufficient because the replacement Dive Computers contain the same defects.

## CLASS DEFINITION AND ALLEGATIONS

39.   Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3)of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons and entities who purchased a Suunto Cobra, Suunto Cobra 2, Suunto Cobra 3, Suunto Cobra 3 Black, Suunto Vyper, Suunto Vyper 2, Suunto Vyper Air, Suunto HelO2, Suunto Gekko, Suunto Vytec, Suunto Vytec DS, Suunto D9tx, Suunto D9, Suunto D6, Suunto D6i, Suunto D4i, Suunto D4, and Suunto Zoop (collectively, "Dive Computers") in the United States for personal use.

40.   Excluded from the class is defendant, its parents, subsidiaries, affiliates, officers and directors, those who purchased Dive Computers for the purpose of resale, and those who assert claims for personal injury.

41.   Members of the class are so numerous and geographically dispersed that joinder of all class members is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed class contains many thousands of members.  The precise number of class members is unknown to

BLOOD HURST & O'REARDON, LLP

plaintiff.

42.     Common questions of law and fact exist as to all members of the class and predominate over questions affecting only individual class members. The common legal and factual questions include, but are not limited to, the following:

    i.    Whether defendant knew or should have known that use of the Dive Computers poses a serious risk of bodily harm or death;

    ii.    Whether defendant knew or should have known that the Dive Computers were inherently defective and could malfunction in the normal course of use;

    iii.    Whether defendant had a duty to inform plaintiff and class members of the defective nature of the Dive Computers, as well as the malfunction and physical injury and death risks associated with using its Dive Computers;

    iv.    Whether defendant's omissions and/or representations concerning the safety and appropriate uses of the Dive Computers were likely to deceive;

    v.    Whether defendant's alleged conduct violates public policy;

    vi.    Whether the alleged conduct constitutes violations of the laws asserted herein;

    vii.    Whether defendant engaged in false or deceptive advertising;

    viii.    Whether plaintiff and class members have sustained monetary loss and the proper measure of that loss;

    ix.    Whether plaintiff and class members are entitled to restitution, disgorgement of defendant's profits, declaratory and/or injunctive relief; and

    x.    Whether plaintiff and class members are entitled to an award of compensatory damages.

BLOOD HURST & O'REARDON, LLP

00082275

11     Case No.

43.   The claims asserted by plaintiff in this action are typical of the claims of the members of the class, as the claims arise from the same course of conduct by defendant, and the relief sought is common.   Plaintiff and class members suffered uniform damages caused by their purchase of the Dive Computer marketed and distributed by defendant.

44.   Plaintiff will fairly and adequately represent and protect the interests of the members of the class.   Plaintiff has retained counsel competent and experienced in both consumer protection and class litigation.

45.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually.   It would thus be virtually impossible for the class, on an individual basis, to obtain effective redress for the wrongs done.   Furthermore, even if class members could afford such individualized litigation, the court system could not.   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.   Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.   By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

46.   In the alternative, the class also may be certified because defendants have acted or refused to act on grounds generally applicable to the class thereby making final declaratory and/or injunctive relief with respect to the members of the class as a whole appropriate.

47.   Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire class, on grounds generally applicable to the entire

BLOOD HURST & O'REARDON, LLP

class, to enjoin and prevent defendants from engaging in the acts described, and to require defendants to provide full restitution to plaintiff and class members.

48.    Unless a class is certified, defendant will retain monies that were taken from plaintiff and class members as a result of defendant's wrongful conduct.   Unless a classwide injunction is issued, defendant will continue to commit the violations alleged and the members of the class and the general public will continue to be misled.

## COUNT I

### Violation of the Consumers Legal Remedies Act

### Civil Code § 1750 *et seq.*

49.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

50.    This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "Act").   Plaintiff is a consumer as defined by California Civil Code § 1761(d).   The Dive Computers are goods within the meaning of the Act.

51.    Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with plaintiff and the class which were intended to result in, and did result in, the sale of the Dive Computers:

(5)    Representing that [the Products] have... approval, characteristics,... uses [and] benefits ... which [they do] not have . . . .

\*          \*          \*

(7)    Representing that [the Products] are of a particular standard, quality or grade. . . if [they are] of another.

\*          \*          \*

(9)    Advertising goods. . . with intent not to sell them as advertised.

\*          \*          \*

13        Case No.
CLASS ACTION COMPLAINT

(16)   Representing that [the Products have] been supplied in accordance with a previous representation when [they have] not.

52.   Defendant violated and continues to violate the Act by failing to disclose material facts about the Dive Computers as described above when they knew, or should have known, that the Dive Computers are defective and can malfunction, posing a serious risk of injury or death to consumers.  Defendant further violates the Act by advertising that the Dive Computers perform certain functions when the Dive Computers are defective and can malfunction, resulting in a loss of those functions.

53.   Pursuant to § 1782(d) of the Act, plaintiff and the class seek a court order enjoining defendant's above-described wrongful acts and practices and for restitution and disgorgement.

54.   Pursuant to § 1782 of the Act, plaintiff notified defendant in writing by certified mail of the particular violations of § 1770 of the Act and demanded that defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of defendant's intent to so act.  A copy of the letter is attached hereto as Exhibit A.  If defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the Act, plaintiff will amend this complaint to add claims for damages, as appropriate.

55.   Defendant's conduct is malicious, fraudulent and wanton, and provides misleading information.

56.   Pursuant to § 1780(d) of the Act, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

**COUNT II**

**Violation of Business & Professions Code § 17200, *et seq.***

57.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

58.    As alleged herein, plaintiff has suffered injury in fact and lost money or property as a result of defendant's conduct because he purchased a Dive Computer that has defective software and/or hardware, resulting in the Dive Computer being unsafe for ordinary use.

59.    In the course of conducting business, defendant committed unlawful business practices by, *inter alia*, omitting and/or misrepresenting material facts concerning the safety and integrity of the Dive Computers, making representations (which also constitute advertising within the meaning of § 17200 and § 17500) as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16) under the CLRA, Business & Professions Code §§ 17200, *et seq.*, 17500, *et seq.*, and the common law, including breach of implied warranty.  Defendant's above-described wrongful acts and practices constitute actual and constructive fraud within the meaning of Civil Code §§ 1572 and 1573, as well as deceit, which is prohibited under Civil Code §§ 1709 and 1711.

60.    Plaintiff and the class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

61.    Defendant's omissions, non-disclosures, acts, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of Business and Professions Code § 17200, *et seq.*, in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

BLOOD HURST & O'REARDON, LLP

00082275

15    Case No.

**CLASS ACTION COMPLAINT**

62.    As stated in this complaint, plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws resulting in harm to consumers.  Plaintiff asserts violations of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code § 17200, *et seq.*

63.    There were reasonably available alternatives to further defendant's legitimate business interests, other than the conduct described herein.

64.    Defendant's claims, nondisclosures and misleading statements, as more fully set forth above, are also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200, *et seq.*

65.    Defendant's conduct caused and continues to cause substantial injury to plaintiff and the other class members.  Plaintiff has suffered injury in fact and has lost money or property as a result of defendant's unfair conduct.

66.    Plaintiff, on behalf of himself, and all others similarly situated, seeks restitution of all money obtained from plaintiff and the members of the class as a result of defendant's unfair competition, an injunction prohibiting defendant from continuing such practices, corrective advertising and all other relief this court deems appropriate, consistent with Business & Professions Code § 17203.

## COUNT III

### Breach of Implied Warranty

67.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

68.    The Uniform Commercial Code § 2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that

BLOOD HURST & O'REARDON, LLP

00082275

kind.

69.     California has adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability Cal. Comm. Code § 2314.

70.     The Dive Computers are "goods" as defined in the California commercial code governing the implied warranty of merchantability.

71.     As a distributor and marketer of the Dive Computers, defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

72.     By placing the Dive Computers in the stream of commerce, defendant impliedly warranted that the Dive Computers are reasonably safe, effective and adequately tested for their intended use and that they are of merchantable quality.

73.     As a merchant of the Dive Computers, defendant knew that purchasers relied upon it to distribute Dive Computers that were reasonably safe, and in fact members of the public, including plaintiff, reasonably relied upon defendant's skill and judgment and upon said implied warranties in purchasing and using the Dive Computers.

74.     Plaintiff and the class members purchased the Dive Computers to be used for their intended purpose.

75.     In breach of its implied warranty, the Dive Computers are not safe and not merchantable because the computers malfunction, resulting in incorrect information regarding a dive and may cause serious bodily harm or death.

76.     The Dive Computers were not reasonably safe for their intended use when they left defendant's control and entered the market.

77.     The Dive Computers' defects were not open or obvious to consumers, including plaintiff and the class, who could not have known about the nature of the risks associated with the Dive Computers until after the Dive

Computers malfunctioned.

78.   All conditions precedent to defendant's liability under this contract have been performed.

79.   Plaintiff and class members were the intended beneficiaries and users of the Dive Computers.  Defendant created the advertising at issue and warranted the Dive Computers to them directly and/or through the doctrine of agency.

80.   As a direct and proximate result of defendant's breach of implied warranties, plaintiff and class members have sustained injuries by purchasing the Dive Computers.  Plaintiff and class members are entitled to judgment and equitable relief against defendant, as well as restitution, including all monies paid for the Dive Computers, disgorgement of profits that defendant received from distribution of the Dive Computers, attorneys' fees, punitive damages, and costs, as set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

Wherefore, plaintiff prays for a judgment:

A.   Certifying the class as requested herein;

B.   Awarding plaintiff and the proposed class members damages;

C.   Awarding restitution and disgorgement of defendant's revenues to plaintiff and the proposed class members;

D.   Awarding declaratory and injunctive relief as permitted by law or equity, including enjoining defendant from continuing the unlawful practices as set forth herein, and directing defendant to identify, with court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by defendant by means of any act or practice declared by this Court to be wrongful;

E.   Ordering defendant to engage in a corrective advertising campaign;

F.   Awarding attorneys' fees and costs; and

**CLASS ACTION COMPLAINT**

BLOOD HURST & O'REARDON, LLP

00082275

G.     Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 21, 2015

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA M. ROACH (254142)

By:      *s/ Timothy G. Blood*
         TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (faxP
tblood@bholaw.com
proach@bholaw.com

BERMAN & RIEDEL, LLP
WILLIAM A. BERMAN (190078)
ALICIA M. SIMINOU (279954)
12264 El Camino Real, Suite 300
San Diego, CA  92130
Tel: 858/350-8855
858/350-9855 (fax)
wberman@bermanlawyers.com
asiminou@bermanlawyers.com

WILLIAMS, KASTNER
  & GIBBS, PLLC
JOHN A. KNOX
DOUGLAS A. HOFMANN
601 Union Street, Suite 4100
Seattle, CA  98101
Tel: 206/628-6600
206/628-6611 (fax)
jknox@williamskastner.com
dhofmann@williamskastner.com

*Attorneys for Plaintiff and the Class*

00082275