# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH A. HUNTZINGER on Behalf of Himself and All Others Similarly Situated,<br><br>    Plaintiff,<br>  v.<br>AQUA LUNG AMERICA, INC.,<br><br>    Defendant. | CASE NO. 15cv1146 WQH (KSC)<br><br>ORDER |

HAYES, Judge:

The matters before the Court are (1) the Motion to Dismiss Class Action Complaint (ECF No. 7) filed by Defendant Aqua Lung America, Inc. and (2) the Motion to Strike Defendant Aqua Lung America Inc.'s Evidentiary Submission Submitted in Support of its Motion to Dismiss (ECF No. 11) filed by Plaintiff Ralph A. Huntzinger.

**I.   Background**

On May 21, 2015, Plaintiff initiated this action by filing a class action complaint. (ECF No. 1). Plaintiff contends that Aqua Lung America, Inc. ("Aqua Lung") committed unlawful business practices by advertising and distributing Suunto scuba diving computers ("Dive Computers") without disclosing material facts to consumers that the computers are defective. Plaintiff alleges that the Dive Computers can malfunction, causing injury or death to consumers. Plaintiff alleges the following claims for relief on behalf of himself and all others similarly situated: (1) violation of

the Consumers Legal Remedies Act, Civil Code § 1750 *et seq.*, (2) violation of the Business and Professions Code, § 17200 *et seq.*, and (3) breach of implied warranty of merchantability.

On July 10, 2015, Defendant filed a motion to dismiss (ECF No. 7), asserting (1) that Plaintiff has not alleged an injury sufficient to establish standing, (2) that Plaintiff's claim should be limited to the model of dive computer he purchased, (3) that a national class should not be certified because differences in state law overwhelm the common issues of the class, (4) that privity does not exist between Plaintiff and Defendant because Plaintiff purchased his computer from a third party retailer, (6) that the complaint does not plead fraud with particularity, and (7) that the statute of limitations has passed for claims regarding some dive computers. On August 17, 2015, Plaintiff filed a response to the motion to dismiss (ECF No. 10) and a motion to strike Defendant's evidentiary submission submitted in support of its motion to dismiss (ECF No. 11). On August 28, 2015, Defendant filed a reply to Plaintiff's response to the motion to dismiss (ECF No. 18) and a response in opposition to Plaintiff's motion to strike (ECF No. 18). On September 8, 2015, Plaintiff filed a reply to the motion to strike. (ECF No. 20). On September 22, 2015, Plaintiff filed a notice of supplemental authority in support of opposition to motion to dismiss. (ECF No. 21).

## II.     Allegations of the Complaint

"Aqua Lung is the exclusive United States distributor for Suunto-branded dive computers, including the Dive Computers at issue and is a Suunto authorized repair facility for the Dive Computers." (ECF No. 1 ¶ 14).

> The Dive Computers are a critical instrument to assist divers in avoiding decompression sickness. The Dive Computers are used to track the depth and time of the dive and calculate theoretical and actual time and depth limits the diver should stay within . . . . Inaccurate information regarding depth and dive time can lead to serious injury or death to the diver.

*Id.* ¶ 17. "Dive Computers also display other critical information such as, water temperature, . . . air tank pressure, and estimated remaining air time. A misreading of any of this information can also lead to serious injury or death." *Id.* ¶ 18. "The only

1  reason to purchase a Dive Computer is to have knowledge of the critical information
2  regarding a dive.  If the Dive Computer cannot reliably provide that information, it is
3  worthless." *Id.* ¶ 19.

> Aqua Lung advertises the Dive Computers as having the ability to provide critical information regarding a dive such as dive depths, air pressure, and remaining air time. For example, on its website Aqua Lung states: 'Suunto Cobra 3 enables continuous decompression for optimal ascent time.' 'Suunto Cobra 3 monitors and displays your tank pressure, tracks your rate of air consumption, and continuously escalates your remaining air time. It also provides visual and audible alarms for depth and pressure and warns you when you're running low on air.' 'Suunto Cobra monitors and displays your tank pressure, tracks your rate of consumption, and continuously calculates your remaining air time.'

*Id.* ¶ 20.

"However, the Dive Computers are defective and prone to malfunction, resulting in the Dive Computers providing inaccurate information regarding dive depth, dive time, air pressure, and remaining air time." *Id.* ¶ 21.  "Aqua Lung, as the distributor and an authorized repair facility for the Dive Computers, knew or should have known that the Dive Computers were failing and defective and knew or should have known that the failing and defective Dive Computers created a life threatening risk of harm to consumers." *Id.* ¶ 22.  "Aqua Lung repair representatives are trained by Suunto on how to repair the Dive Computers.  Aqua Lung receives Dive Computers for repair directly from consumers and through dive shops . . . ." *Id.* ¶ 23.

> Since at least 2005, Aqua Lung has received Dive Computers for repair from consumers who experienced permanent malfunction of the dive computer due to the defective software and/or hardware.  When a permanent malfunction occurs, the Dive Computers report incorrect depths, 'self-dive' or indicate that a dive is occurring when no dive is in fact occurring, report incorrect air time remaining, and/or report incorrect air tank pressure.  All of these malfunctions are the result of defective software and or/hardware in the Dive Computers.

*Id.* ¶ 24.  "There has been at least one reported death as a result of a defective Dive Computer malfunctioning during a dive. . . . The Dive Computer reported substantial air remaining in Ms. Seigman's air tank when, in reality, she was out of air." *Id.* ¶ 25.

"As the distributor and authorized repair provider of the Dive Computers, and a dive equipment manufacturer for over 60 years, Aqua Lung knows that the safe and

1  reliable operation of the Dive Computers is an important concern to consumers." *Id.*
2  ¶ 27. "[D]efendant is in the superior position to know about actual and potential risks
3  and dangers with the Dive Computers." *Id.*

> Despite having knowledge that the Dive Computers all contain the inherent defects, malfunction, and pose a significant hazard to consumers, defendant does not inform consumers . . . of these facts. Indeed, defendant has never issued a recall of the Dive Computers or otherwise notified consumers that the Dive Computers contain a defect in the software and/or hardware that can result in inaccurate readings of critical information during a dive.

*Id.* ¶ 28.

> Instead, Aqua Lung continues to cover up the defect and consumers who use the Dive Computers are left using dangerous and defective products. When Aqua Lung receives a Dive Computer that has suffered a permanent malfunction as described above, it is Aqua Lung's practice to not conduct any repairs. That is because, when the Dive Computer has malfunctioned permanently as a result of the defective software and/or hardware it is unrepairable.

*Id.* ¶ 29.  "If the Dive Computer is outside of warranty, Aqua Lung simply tells the customer that there is no repair."  *Id.* ¶ 30.  "[T]he computer defect is so prevalent that the ordinary two-year warranty for the Dive Computers was extended to five years for problems related to self-diving, incorrect depth readings, tank pressure, and temperature . . . ."  *Id.* ¶ 31.  "[B]ecause all of the Dive Computers contain substantially the same software and/or hardware, the defect exists in all of the them, including the replacements."  *Id.* ¶ 32.

"None of the warnings on the product packaging or in other marketing informed plaintiff or other consumers . . . ordinary use of the Dive Computers carries a substantial risk of serious malfunction whereby the Dive Computer may quit working and/or provide incorrect information about a dive."  *Id.* ¶ 33.  "Instead of properly warning consumers of the hazards posed by using the Dive Computers . . . Aqua Lung continues to falsely represent that the Dive Computers will provide certain accurate information during a dive and impliedly that the Dive Computers are safe for use."  *Id.* ¶ 33. "Defendant advertised the Dive Computers as a safe product and failed to warn consumers that the Dive Computers are defective, and may malfunction and cause

serious bodily harm or death during intended use." *Id.* ¶ 35.

"As a result of Aqua Lung's omissions and representations, plaintiff and class members have been deceived into purchasing and continuing to use the inherently defective, unsafe, and unreliable Dive Computers that have caused plaintiff and the class members to suffer injury and lose money or property." *Id.* ¶ 34. "Plaintiff and class members purchased and used the Dive Computers reasonably believing that the product was safe for its intended use." *Id.* ¶ 35. "[T]he defect caused safety concerns and unreasonable risk of injury, and plaintiff would not have purchased or used the Dive Computer had he known that the product was defective and could malfunction and cause serious bodily harm or death." *Id.* ¶ 36.

"Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure." *Id.* ¶ 39. Plaintiff "seeks certification of the following class: All persons and entities who purchased a Suunto Cobra, Suunto Cobra 2, Suunto Cobra 3, Suunto Cobra 3 Black, Suunto Vyper, Suunto Vyper 2, Suunto Vyper Air, Suunto HelO2, Suunto Gekko, Suunto Vytec, Suunto Vytec DS, Suunto D9tx, Suunto D9, Duunto D6, Suunto D6i, Suunto D4i, Suunto D4, and Suunto Zoop (collectively, 'Dive Computers') in the United States for personal use." *Id.* ¶ 39.

Plaintiff asserts claims against Defendant for violations of (1) the Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750); (2) violation of California Business & Professions Code § 17200 ("Unfair Competition Law" or "UCL"); and (3) breach of implied warranty of merchantability (Uniform Commercial Code ("UCC") § 2-314). Plaintiff seeks an order certifying the proposed class and an order that Defendant engage in a corrective advertising campaign, awarding Plaintiff and the proposed class members damages, restitution and disgorgement of Defendant's revenues, declaratory an injunctive relief, attorneys' fees and costs, and such further relief as may be just and proper. (ECF No. 1 at 19-20).

## II. Standards of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colleges v. United States,* 217 F.3d 770, 778-779 (9th Cir. 2000). In resolving an attack on a court's jurisdiction, the court may go outside the pleadings and consider evidence beyond the complaint relating to jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Safe Air For Everyone v. Doyle,* 373 F.3d 1035, 1039 (9th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly

suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (internal quotation marks omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotation marks omitted).

**III.  Discussion**

  **A.  Standing**

Defendant contends that Plaintiff "does not allege any injury in fact, nor does he allege that he relied upon any misstatement to his detriment. Huntzinger does not allege his Cobra 3 malfunctioned, that it provided inaccurate data or how such data was inaccurate." (ECF No. 7-1 at 16). Defendant contends that Plaintiff "does not allege that Aqua Lung did or did not service his Cobra 3, or that it was replaced. Huntzinger fails to even allege he has ever used his Cobra 3 to scuba dive." *Id.* Defendant contends that Plaintiff "has no 'injury in fact' standing under the CLRA or UCL." *Id.* at 17. Defendant contends that even if Plaintiff does show that he was injured, Plaintiff does not have "standing to assert any claim regarding any dive computer other than the single Cobra 3" computer that Plaintiff purchased. *Id.* at 18. Defendant contends that

Plaintiff's "claims as they relate to dive computers he did not purchase, and advertisements he never saw or relied upon, must be dismissed" for lack of standing. *Id.* at 20.

Plaintiff contends that the complaint establishes "standing under the UCL and CLRA because he alleges he purchased the Dive Computer reasonably believing it was non-defective and safe to use as a dive computer, when in fact it was defective, resulting in an inaccurate display of dive related information." (ECF No. 10 at 17, citing Compl. ¶ 11). Plaintiff contends that his "allegations that Aqua Lung failed to inform him of a safety defect and that he would not have purchased the Dive Computer had he known of that safety defect are sufficient to confer standing." *Id.* at 18. Plaintiff alleges that the alleged computer defect is "a material fact, as the defect caused safety concerns and unreasonable risk of injury, and plaintiff would not have purchased or used the Dive Computer had he known that the product was defective and could malfunction and cause serious bodily harm or death." *Id.* (citing Compl. ¶ 36).

### 1. Plaintiff's Standing

In the absence of Article III standing, a court lacks subject matter jurisdiction to entertain the lawsuit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-110 (1998). Plaintiff must establish (1) an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

"[L]ost money or property—economic injury—is itself a classic form of injury in fact." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 886 (Cal. 2011). The UCL was revised in 2004 by Proposition 64, limiting private standing "to any 'person who has suffered injury in fact or lost money or property as a result of unfair competition.'" *Id.* at 320-21 (citing Bus. & Prof. Code, § 17204, as amended by Prop. 64, as approved

by voters, Gen. Elec. (Nov. 2, 2004) § 3). "While the economic injury requirement is qualitatively more restrictive than federal injury in fact, embracing as it does fewer kinds of injuries, nothing in the text of Proposition 64 or its supporting arguments suggests the requirement was intended to be quantitatively more difficult to satisfy." *Id.* at 324.

"To establish standing to bring a claim under the UCL, the consumer must allege that (1) the defendant made a false representation about a product, (2) the consumer purchased the product in reliance on the misrepresentation, and (3) he would not have purchased the product otherwise." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1109 (9th Cir. 2013) (citing *Kwikset Corp.*, 246 P.3d at 877). Proposition 64 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009). The California Supreme Court has held that

> Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct. . . . It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision.

*Id.* (citations and internal quotation marks omitted).

> [A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.

*Id.* (citations and internal quotation marks omitted).

A plaintiff who has standing under the UCL's "lost money or property" requirement has also established standing under the CLRA. *Id.* at 1108 (citing *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 320 (2012) ("noting that where a plaintiff alleged an economic injury under the UCL he also adequately alleged injury under the CLRA")). "If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven

injury in fact." *Kwikset Corp.*, 246 P.3d at 887.

In this case, Plaintiff alleges that he would not have purchased the Dive Computer if Defendant had disclosed the alleged defects in the Dive Computer. This allegation is sufficient to establish standing if supported by reasonable factual inferences. Plaintiff alleges that the Dive Computers are advertised and sold for the sole purpose of transmitting information to its wearer during scuba dives. Plaintiff alleges that the purchased Suunto Dive Computer cannot be used for the only purpose it was advertised and sold for because of the computer's alleged defects. Plaintiff alleges that Aqua Lung knew or should have known of the defects in the Dive Coputers. Plaintiff alleges that Aqua Lung continued to market and distribute Suunto Dive Computers without notifying consumers of the inherent defects that make the computers unreliable and therefore unsafe to use. Plaintiff states facts sufficient to infer that Defendant's omission was a material fact in causing Plaintiff to purchase a Dive Computer. *See In re Tobacco II Cases*, 207 P.3d at 39. Plaintiff's allegation of a material non-disclosure by Aqua Lung is sufficient to infer that Plaintiff relied on Aqua Lung's non-disclosure in deciding to purchase the Suunto Dive Computer. *See id.*

### 2. Allegations Regarding the Seventeen Other Dive Computers

"District courts in the Ninth Circuit disagree on whether class representatives have standing to bring claims for unpurchased products." *Ruszecki v. Nelson Bach USA Ltd.*, No. 12CV495, 2015 WL 6750980, at *3 (S.D. Cal. June 25, 2015) (citing *Aguilar v. Boulder Brands, Inc.*, No. 12CV1862, 2013 WL 2481549, at *2 (S.D. Cal. June 10, 2013)).

> Some district courts allow only a narrow scope of claims a plaintiff may bring in a class action. . . . Other courts, however, find that when a plaintiff otherwise has standing to bring UCL and CLRA claims for products she actually purchased, 'the issue of whether that plaintiff may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'

*Id.* (citing *Cardenas v. NBTY, Inc.*, 870 F.Supp.2d 984, 992 (E.D. Cal. 2012); *Aguilar*, 2013 WL 2481549, at *2; *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530

(C.D. Cal. 2011).

> The *Cardenas* court refused to grant a motion to dismiss based on a standing argument that plaintiff had not purchased all the products in the complaint, and explained that this issue was better addressed under Rule 23 because she had sufficiently alleged that all of the relevant products that [sic] shared similar ingredients and representations.

*Id.*

Plaintiff alleges that all eighteen Dive Computers included in the complaint have the same software and/or hardware defect that makes the Dive Computers unfit for the purpose they are marketed and sold for. Plaintiff alleges that the business practice of concealing the defects in the computers "is uniform across all Dive Computers." (ECF No. 10 at 20). The Court concludes that Plaintiff's ability to represent class members injured by similar products should be analyzed under Rule 23.[1]

### B. Class Action Allegations

Defendant contends that Plaintiff's class claims should be dismissed. (ECF No. 7-1 at 21). Defendant asserts that "[t]he only connections to California alleged in the Complaint is that Huntzinger lives here and he bought the Cobra 3 here" and that "Aqua Lung is incorporated in Delaware." *Id.* at 22. Defendant asserts that "the transactions that are the subject of Huntzinger's class claims presumably occurred in all fifty states." *Id.* (citation omitted). Defendant contends that "[u]nder these circumstances, and California's choice of law rules, this Court cannot apply California law on a classwide basis." *Id.* Defendant asserts that the "Court would have to apply the laws of all the other states. . . . The task for the litigants and Court would be too burdensome and the jury would be overwhelmed with complexity" because "state consumer protection laws of the 49 remaining states differ in material respects." *Id.* at 22-23.

Plaintiff contends that California law should apply to the nationwide class action because Aqua Lung "is headquartered in California, has its operations in California, conducts all relevant business in California . . . and a significant portion of the class

---

[1] The Court does not consider Defendant's evidentiary submissions attached to the motion to dismiss at this stage in the proceedings.

members reside in California . . . ." (ECF No. 10 at 21).

Determining the law to apply in a nationwide class action requires a choice of law analysis. At the motion to dismiss stage of litigation, the record is not developed and a determination of choice of law may be premature. *See Czuchaj v. Conair Corp.*, 13CV1901, 2014 WL 1666427, at *3 (S.D. Cal. April 17, 2014). In *Mazza v. American Honda Motor Company, Inc.*, 666 F.3d 581, 589-94 (9th Cir. 2012), the court conducted a detailed choice of law analysis and concluded that based on the circumstances before it, California law should not be applied to non-resident class members. *Mazza*, cited by Defendants, was decided at the class certification stage of the case and does not stand for the bright-line rule that "nationwide classes do not have standing to assert California consumer protection statutes." *See Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL 1632697, at *21 (N.D. Cal. April 16., 2013). A choice of law "inquiry is most appropriate at the class certification stage, after the parties have engaged in discovery." *See id.*

In this case, whether California law can be applied to all claims is a choice of law inquiry that will be addressed at the class certification stage of the case, after the parties have had the opportunity to conduct discovery. Plaintiff's class action claims are not dismissed at this stage of the proceedings.

**C.  Fed. R. Civ. P. 9(b)**

Defendant contends that Plaintiff's causes of action for violations of the CLRA and UCL should be dismissed because the complaint fails to plead the claims "with the particularity required under Fed. R. Civ. P. 9(b)." (ECF No. 7-1 at 25). Defendant alleges that "Huntzinger's Complaint makes broad conclusory allegations of fraud, but fails to provide any particulars." *Id.* Defendant alleges that the complaint "does not identify any alleged misrepresentation that Huntzinger saw or read and it does not allege when, where or how any such misrepresentation to him was made." *Id.* Defendant contends that the complaint "fails to provide Aqua Lung with sufficient notice to defend the fraud claims." *Id.*

Plaintiff contends that "Rule 9(b) only applies to UCL and CLRA averments based on fraudulent conduct," not "all UCL and CLRA claims." (ECF No. 10 at 27) (citations and internal quotation marks omitted). Plaintiff contends that "[e]ven if Rule 9(b) applies, Plaintiff's allegations are sufficient" to meet the requirements of Rule 9(b). *Id.* Plaintiff contends that "[i]n an omission case like this, a plaintiff 'faces a slightly more relaxed burden, do to the fraud-by-omission plaintiff's inherent inability to specify the time, place, and specific content of an omission in quite as precise a manner.'" *Id.* (citing *Tait v. BSH Home Appliances Corp.*, No. SACV 10-00711 DOC, 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011)). Plaintiff contends that

> Plaintiff alleges the facts surrounding the omission with sufficient detail to put Aqua Lung on notice, including the information Aqua Lung concealed from Plaintiff (the defective nature of the Dive Computer, ¶¶4, 21), that Aqua Lung knew or should have known that the Dive Computers were defective (¶¶22-27), that the omission concerned a safety issue (¶36), that the concealed information was material (*id.*), and that had Plaintiff known that his Dive Computer was defective he would not have purchased it (¶11). Additionally . . . Plaintiff's injury is that he purchased a falsely advertised product and thus, he does not have to allege that his Dive Computer malfunctioned.

*Id.* at 28.

Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal quotation marks omitted). A fraud-based omission claim under the UCL and CLRA "must be contrary to a representation actually made by the defendant, or an omission of fact the defendant was obliged to disclose." *In re Sony Gaming Networks and Consumer Data Security Breach Litigation*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014). "A duty to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material fact." *Id.*

"[I]n a case where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess*, 317 F.3d at 1104. "While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that defendant engaged in fraudulent conduct . . . . In that event, the claim is said to be grounded in fraud or to sound in fraud, and the pleading as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citations omitted). "Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)." *Id.* at 1127. This Court has held that Rule 9(b) does not apply when a "Plaintiff alleges that Defendants made representations and omissions on their product packaging, but does not allege knowledge of falsity or intent to induce reliance." *Johns v. Bayer Corp.*, 09CV1935, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010).

In this case, Plaintiff alleges that "Defendant advertised the Dive Computers as a safe product." (ECF No. 1 ¶ 35). Plaintiff alleges that Defendant knew "that the Dive Computers all contain the inherent defects, malfunction, and pose a significant hazard to consumers." *Id.* ¶ 28. Plaintiff alleges Defendant's knowledge was based on consumer complaints and based on Defendant's repairs on Dive Computers belonging to "consumers who experienced permanent malfunction of the dive computer due to the defective software and/or hardware." *Id.* ¶¶ 24-25. These factual allegations are sufficient to support an inference that the Defendant knew of the defects that existed in the Dive Computers and failed to disclose the material defect to consumers while continuing to market and distribute the Dive Computers. The Court concludes that under the requirements of Rule 9(b), the Plaintiff has plead sufficient facts to put the Defendant on notice of the claims.

**D.     Implied Warranty of Merchantability**

Defendant contends that California requires direct privity between buyer and seller for an implied warranty claim. (ECF No. 7-1 at 23). Defendant contends that "direct privity is absent in this case since Huntzinger bought the Cobra 3 from a third party internet retailer, not from Aqua Lung." *Id.* at 24.

Plaintiff contends that an exception to the vertical privity requirement applies in this case because "Plaintiff and the rest of the Class are the third-party beneficiaries of the implied warranty made between Aqua Lung as the distributor of the Dive Computers and the ultimate retail sellers where Plaintiff and the other Class members purchased the Dive Computers." (ECF No. 10 at 26).

"Under California Commercial Code section 2314, . . . a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain. . . . Some particularized exceptions to the rule exist." *Id.* "Under California Civil Code § 1559, a third party beneficiary can enforce a contract made expressly for his benefit . . . the only requirement is that the party is more than incidentally benefitted by the contract." *Cartwright v. Viking Industries, Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008); *see e.g.*, *Shell v. Schmidt*, 272 P.2d 82 (Cal. App. 1954) (finding that where a contractor constructing homes promised to follow plans which were filed with Federal Housing Authority ("FHA") in return for FHA's grant of priority permits to contract, plaintiffs who purchased the homes were third party beneficiaries of the agreement between the contractor and the FHA)*; Gilbert Fin. Corp. v. Steelform Contracting Co.*, 145 Cal. Rptr. 448 (Cal. App. 1978) (finding that a plaintiff who contracted for construction of a bank records storage building could sue the subcontractor for breach of implied warranty as a third party beneficiary of the contract between the contractor and subcontractor).

Determining whether a third party is an intended beneficiary of a contract "involves construction of the intention of the parties, gathered from reading the contract

as a whole in light of the circumstances under which it was entered." *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1063 (9th Cir. 2015). "[W]here a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the implied warranty's breach." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010). Plaintiff does not cite any reported California cases extending the third party beneficiary exception to the consumer products context. However, district courts have recognized a the third party beneficiary exception to the privity requirement in the consumer products context. *See e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983 (N.D. Cal. 2014) (applying the third party beneficiary exception to plaintiffs who bought a car from a dealership and then sued the manufacturer for breach of implied warranty); *Roberts v. Electrolux Home Products, Inc.*, CV12-1644, 2013 WL 7753579, at *10 (C.D. Cal. March 4, 2013) (finding that the decision of the California Supreme Court in "*Gilbert* is best interpreted to establish an exception to the privity requirement that applies when a plaintiff is the intended beneficiary of implied warranties in agreements linking a retailer and a manufacturer, and therefore a lack of privity does not bar plaintiff's implied warranty claims."); *In re Sony Vaio Computer Notebook Trackpad Litigation*, 9CV2109, 2010 WL 4262191, at *3 (S.D. Cal. Oct. 28, 2010) (finding that "a plaintiff may maintain an implied warranty claim against a manufacturer when a plaintiff is a third party beneficiary of a contract between the manufacturer . . . and a third party" retailer); *Cartwright v. Viking Industries, Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008) (finding that the complaint sufficiently alleged that plaintiffs were the intended third party beneficiaries of the product manufacturer's warranty because the plaintiffs claimed that agreements between the manufacturer and distributors or initial purchasers were intended to benefit the ultimate consumers of the product).

In this case, the complaint alleges that "plaintiff purchased a Suunto Cobra 3 dive

computer from leisurepro.com for $699.95." (ECF No. 1 at 4). The complaint alleges that "Aqua Lung marketed, and distributed the Dive Computers to thousands of consumers in the United States . . ." and that "Aqua Lung is the exclusive United States distributor for Suunto-branded dive computers, including the Dive Computers at issue . . . ." *Id.* at 5. The complaint includes the conclusory allegations that "Plaintiff and class members were the intended beneficiaries and users of the Dive Computers" and that "Defendant created the advertising at issue and warranted the Dive Computers to them directly and/or through the doctrine of agency." These conclusory allegations are not supported by facts sufficient to infer a contractual relationship between leisurepro.com and Aqua Lung. *See Northstar Financial Advisors, Inc.*, 779 F.3d at 1063.

### E. Statute of Limitations

Defendant contends that "[t]he California consumer claims for the putative class have a statute of limitations of three years for the CLRA, Cal. Civil Code § 1783, and four years for the UCL, Cal. Business & Professions Code § 17208." (ECF No. 7-1 at 27). Defendant contends that "[t]he implied warranty claim has a statute of limitations in California of 4 years, Cal. U. Com. Code § 2725, but in other states it is a three-year limitation period . . . ." *Id.* Defendant asserts that "a number of the accused dive computers are so old, and have been so long out of production or sale that they should not be included in this case. *Id.* at 26. Defendant asserts that

> The Cobra 2 and the Vyper 2, were last manufactured in 2008, and last sold in July 2009 . . . . Three computer models have not been manufactured since 2010: Vytec, and Vytec DS, Gekko; but U.S. sales ended in 2008 for the Vytec and in May 2009 for the Vytec DS . . . with sales of the Gekko ending May 11, 2010. Finally, sales ended in August 2011 for the D6 and D4 computers, and December 2011 for the D9.

*Id.* at 27. Defendant contends that the Cobra 2, Vyper 2, Gekko, Vytec, and Vytec DS computers were last sold on dates outside of the statute of limitations for the CLRA, UCL, and implied warranty claims. Defendant contends that the CLRA claim should also be dismissed as to the D9, D6, and D4 because they were last sold on dates outside of the three-year statutory of limitations period for a CLRA claim.

1   "Plaintiff alleges that Aqua Lung actively concealed the defect by not informing
2   consumers of the defect and instead, implementing an undisclosed extended warranty
3   program . . . . Plaintiff and other Class members could not have known of the defect
4   when they purchased their Dive Computers." *Id.* (citing Compl. ¶¶ 29-31). Plaintiff
5   contends that the statute of limitations on Plaintiff's claims is tolled. *Id.*

6   "When a motion to dismiss is based on the running of the statute of limitation,
7   it can be granted only if the assertions of the complaint, read with the required liberality,
8   would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean*
9   *Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). The statute of limitations for UCL and
10  CLRA claims begins to run "when a reasonable person would have discovered the
11  factual basis for a claim." *Broberg v. The Guardian Life Ins. Co. of Am.*, 171 Cal. App.
12  4th 912, 920 (2009); *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1196-97
13  (2013). "A statute of limitations may be tolled if the defendant fraudulently concealed
14  the existence of a cause of action in such a way that the plaintiff, acting as a reasonable
15  person, did not know of its existence." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d
16  1055, 1060 (9th Cir. 2012). "The plaintiff carries the burden of pleading and proving
17  fraudulent concealment; it must plead facts showing that the defendant affirmatively
18  misled it, and that the plaintiff had neither actual nor constructive knowledge of the
19  facts giving rise to its claim despite its diligence in trying to uncover those facts." *Id.*
20

21  The complaint alleges that "Aqua Lung, as the distributor and an authorized
22  repair facility for the Dive Computers, knew or should have known that the Dive
23  Computers were failing and defective . . . . Since at least 2005, Aqua Lung has received
24  Dive Computers for repair from consumers who experienced permanent malfunction
25  of the dive computer due to the defective software and/or hardware." (ECF No. 1 ¶¶
26  22, 24). The complaint alleges that "[d]espite having knowledge that the Dive
27  Computers all contain the inherent defects, malfunction, and pose a significant hazard
28  to consumers, defendant does not inform consumers . . . of these facts." *Id.* ¶ 28. The

1  complaint does not specifically allege when Plaintiff discovered the alleged defects in
2  the Dive Computers Defendant markets and sells.  Plaintiff does, however, allege that
3  Plaintiff purchased the Cobra 3 dive computer on or about May 14, 2013 and alleges
4  that "plaintiff would not have purchased or used the Dive Computer had he known that
5  the product was defective . . . ."  (ECF No. 1 ¶¶ 11, 36).  Accepting as true the
6  allegations that Defendant knew about the defective Dive Computers but concealed the
7  defects from consumers and that Plaintiff and the other class members did not know
8  about the defects until at least 2013, the complaint alleges sufficient facts to survive a
9  motion to dismiss based on the statute of limitations.

## IV.   Conclusion

IT IS HEREBY ORDERED that Plaintiff's implied warranty of merchantability claim is dismissed without prejudice. The motion to dismiss (ECF No. 7) filed by Defendant Aqua Lung is denied in all other respects.

IT IS FURTHER ORDERED that Plaintiff's motion to strike (ECF No. 11) is denied as moot.

DATED:  December 10, 2015

**WILLIAM Q. HAYES**
United States District Judge