# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH A. HUNTZINGER and ERIC BUSH, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br>v.<br>AQUA LUNG AMERICA, INC. and SUUNTO OY,<br><br>Defendants. | CASE NO. 15cv1146-WQH-AGS<br><br>ORDER |

HAYES, Judge:

The matters before the Court are the Motion to Strike Aqua Lung's Third Party Complaint (ECF No. 128) and the Motion to Dismiss the Second Amended Class Action Complaint (ECF No. 129) filed by Suunto Oy.

## I. BACKGROUND

On May 21, 2015, Plaintiff Ralph Huntzinger initiated this action by filing a class action complaint alleging the following causes of action against Defendant Aqua Lung America, Inc. ("Aqua Lung"): (1) violation of Consumers Legal Remedies Act ("CLRA"), Civil Code section 1750 *et seq.*; (2) violation of the Unfair Competition Law ("UCL"), Business and Professions Code section 17200 *et seq.*; and (3) breach of implied warranty. (ECF No. 1). On December 10, 2015, the Court issued an order granting in part and denying in part a motion to dismiss filed by Aqua Lung. (ECF No. 22). The Court dismissed the implied warranty of merchantability claim and denied the motion to dismiss in all other respects. *Id.*

On January 7, 2016, Huntzinger filed the First Amended Class Action Complaint (ECF No. 26) alleging the same three causes of action. (ECF No. 26). On January 21, 2016, Aqua Lung filed an Answer to the Amended Complaint. (ECF No. 28).

On August 2, 2016, Aqua Lung filed a Third Party Complaint against Suunto Oy ("Suunto"). (ECF No. 45). On December 6, 2016, Suunto filed an Answer to the Third Party Complaint. (ECF No. 61).

On March 13, 2017, Huntzinger filed a motion for leave to file a Second Amended Class Action Complaint. (ECF No. 79). On June 1, 2017, the Court granted leave to file the Second Amended Class Action Complaint ("SAC"). (ECF No. 111).

On June 9, 2017, Huntzinger and newly-added plaintiff Eric Bush filed the SAC alleging the same causes of action for violations of the CLRA, violation of the UCL, and breach of the implied warranty against Aqua Lung and newly-added defendant Suunto. (ECF No. 117).

On July 5, 2017, Aqua Lung filed an Amended Third Party Complaint against Suunto. (ECF No. 124).

On July 5, 2017, Aqua Lung filed an Answer to the SAC. (ECF No. 123).

On July 19, 2017, Suunto filed a motion to strike the Third Party Complaint. (ECF No. 128). On August 2, 2017, Aqua Lung filed a Notice of Non-opposition. (ECF No. 131). On August 4, 2017, Suunto filed a reply. (ECF No. 133).

On July 19, 2017, Suunto filed a motion to dismiss the SAC. (ECF No. 129). On August 21, 2017, Plaintiffs filed a response in opposition. (ECF No. 137). On September 5, 2017, Suunto filed a reply. (ECF No. 138).

**II. ALLEGATIONS OF THE COMPLAINT**

Suunto is a Finnish Company "in the business of designing and manufacturing adventure sports equipment including the Dive Computers." (ECF No. 117 at ¶ 14). Suunto "designed and manufactured the Dive Computers that were distributed by defendant Aqua Lung." *Id.* ¶ 14. "Suunto sought out and entered into a distribution agreement with Aqua Lung for the purpose of marketing and distributing the Dive

Computers in the United States for sale to consumers." *Id.* ¶ 21.

Aqua Lung is a Delaware corporation "in the business of distributing and marketing scuba diving products." *Id.* ¶ 19. Until December 31, 2015, "Aqua Lung was the exclusive United States distributor for Suunto-branded dive computers, including the Dive Computers at issue and was a Suunto authorized repair facility for the Dive Computers." *Id.* ¶ 23.

"Dive Computers[1] are devices used by underwater divers to measure various aspects of a dive critical to the safety of the diver." *Id.* ¶ 26. "Dive Computers are a critical instrument to assist divers in avoiding decompression sickness. They are used to track . . . the time and depth limits the diver should stay within to avoid decompression sickness." *Id.* ¶ 28. "Dive Computers also display other critical information such as, water temperature . . . , air tank pressure, and estimated remaining air time. A misreading of any of this information can also lead to serious injury or death." *Id.* ¶ 29. "The only reason to purchase a Dive Computer is to have knowledge of the critical information regarding a dive. If the Dive Computer cannot reliably provide that information, it is worthless." *Id.* ¶ 30.

"Defendants advertised the Dive Computers as having the ability to provide critical information regarding a dive, such as, dive depths, air pressure and remaining air time." *Id.* ¶ 31. "The user guides for the Dive Computers, which were created by Suunto, similarly highlight the Dive Computers' purpose. For example, in the Cobra 3 user guide, Suunto states: 'The Cobra 3 simplifies your diving experience because all the information you need relating to depth, time, tank pressure, decompression status, and direction is available on one easy-to-read screen.'" *Id.* ¶ 32. Suunto owns a website which "advertise[s] the Dive Computers to United States consumers" by

---

[1] The SAC defines Dive Computers as "Suunto-branded dive computers, including the Suunto Cobra, Suunto Cobra 2, Suunto Cobra 3, Suunto Cobra 3 Black, Suunto Vyper, Suunto Vyper 2, Suunto Vyper Air, Suunto HelO2, Suunto Gekko, Suunto Vytec, Suunto Vytec DS, Suunto D9tx, Suunto D9, Suunto D6, Suunto D6i, Suunto D4i, Suunto D4, Suunto Zoop, and Suunto Mosquito." (ECF No. 117 at ¶ 1).

"providing information about the key features and specifications of Dive Computers, pictures of Dive Computers and videos on how the Dive Computers are used." *Id.* ¶ 33. "Aqua Lung marketed the Dive Computers using marketing materials Suunto created and supplied to Aqua Lung for the purpose of marketing and selling the Dive Computers to United States consumers. . . . All advertising in the United States, including the product packaging for the Dive Computers, was and is created by and controlled by Suunto." *Id.* ¶ 36.

"[T]he Dive Computers are defective and prone to malfunction, resulting in the Dive Computers providing inaccurate information regarding data such as dive depth, dive time, tank air pressure, and remaining air time." *Id.* ¶ 41. "Defendants knew the Dive Computers were failing and defective and knew or should have known that the failing and defective Dive Computers created a life threatening risk of harm to consumers." *Id.* ¶ 42.

> Suunto maintains a world-wide web-based system for reporting issues with the Dive Computers. Every time an authorized repair facility, including Aqua Lung, repaired or repairs a Dive Computer, the information for the repair is entered in a computerized system known as the 'Service Log' that sends the information directly to Suunto in Finland. Repair facilities obtain replacement Dive Computers and replacement parts from Suunto based on the information input into the Service Log.

*Id.* ¶ 45. "Defendants received Dive Computers for repair from consumers who experienced permanent malfunction of the dive computer due to the defective software and/or hardware. This information was input into the Service Log and provided directly to Suunto." *Id.* ¶ 47. "When a permanent malfunction occurs, the Dive Computers report incorrect depths, 'self-dive' or indicate that a dive is occurring when no dive is in fact occurring, report incorrect air time remaining, and/or report incorrect tank pressure. All of these malfunctions are the result of defective software and/or hardware in the Dive Computers." *Id.* ¶ 48. Aqua Lung received thousands of Dive Computers suffering from the malfunction, "reported these failures to Suunto and had extensive communications with Suunto about the failures and need to fix the Dive Computers." *Id.* ¶ 49.

"Suunto continued to manufacture Dive Computers for sale in the United States with the same defective software and/or hardware." *Id.* ¶ 54. "When Aqua Lung and other repair facilities receive a Dive Computer that has suffered a permanent malfunction as described above, the repair facilities do not conduct any repairs . . . because . . . the defective software and/or hardware it is unrepairable." *Id.* ¶ 55. "If the Dive Computer is outside warranty, the customer is told there is no repair." *Id.* ¶ 56. "If the Dive Computer is within the product warranty, the defective Dive Computer is replaced with a new Dive Computer." *Id.* ¶ 57. "[T]he replacement Dive Computers do not provide any relief because they suffer from the same hardware and/or software defect." *Id.* ¶ 58. "Each of the Dive Computers . . . contains materially the same software and hardware that operates the Dive Computer's critical functions." *Id.* ¶ 3.

"None of the warning on the product packaging or in other marketing informed . . . consumers that because of the Dive Computers' inherent defect . . ordinary use of the Dive Computers carries a substantial risk of serious malfunction whereby the Dive Computer may quit working and/or provide incorrect information about a dive." *Id.* ¶ 59. "Instead of properly warning consumers of the hazards posed by using the Dive Computers as intended, defendants continue to falsely represent that the Dive Computers will provide certain accurate information during a dive and impliedly that the Dive Computers are safe for use." *Id.* "[D]efendants have never issued a recall of the Dive Computers or otherwise notified consumers that the Dive Computers contain [the] defect. . . ." *Id.* ¶ 53.

"Defendants advertised the Dive Computers as a safe product and failed to warn consumers that the Dive Computers are defective, and may malfunction and cause serious bodily harm or death during intended use. Plaintiffs and class members purchased and used the Dive Computers reasonably believing that the product was safe for its intended use." *Id.* ¶ 61. "[P]laintiffs would not have purchased or used the Dive Computer had they known that the product was defective and could malfunction and cause serious bodily harm or death." *Id.* ¶ 62. "Defendants' omissions and

misrepresentations were a material factor in influencing plaintiffs' decision to purchase the Dive Computers[.]" *Id.* ¶ 63.

On May 14, 2013, Plaintiff Huntzinger "purchased a Suunto Cobra 2 dive computer from leisurepro.com for $699.95" that was "designed and manufactured by Suunto." *Id.* ¶ 12. "Plaintiff Huntzinger purchased and used the Suunto Cobra 3 dive computer believing it was safe to use during scuba dives, when in fact the Suunto Cobra 3 was defective, resulting in an inaccurate display of dive related information in 2014." *Id.* "On or about 2009, plaintiff [Bush] purchased a Suunto Cobra 3 dive computer from Sport Chalet for approximately $300 to $400" that was "designed and manufactured by Suunto and distributed to Sport Chalet by Aqua Lung for the purpose of resale." *Id.* ¶ 13. Plaintiff Bush purchased and used the Suunto Cobra 3 dive computer believing it was safe to use during scuba dives, when in fact the Suunto Cobra 3 was defective[.]" *Id.* "On or about, October 2015, plaintiff Bush purchased a Suunto D6i to replace the unrepairable and defective Cobra 3. Plaintiff Bush purchased and used the Suunto D6i dive computer believing it was safe to use during scuba dives, when in fact the Suunto D6i was defective." *Id.*

Plaintiffs "would not have purchased or used" the Dive Computers had they known that the Dive Computers were "unsafe and unfit for their intended use[.]" *Id.* ¶¶ 12,13. Plaintiffs Huntzinger and Bush "suffered injury in fact and lost money or property as a result of Suunto's unfair business practice." *Id.* ¶¶ 12,13.

> Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following nationwide class: All persons and entities who purchased a Suunto Cobra, Suunto Cobra 2, Suunto Cobra 3, Suunto Cobra 3 Black, Suunto Vyper, Suunto Vyper 2, Suunto Vyper Air, Suunto HelO2, Suunto Gekko, Suunto Vytec, Suunto Vytec DS, Suunto D9tx, Suunto D9, Suunto D6, Suunto D6i, Suunto D4i, Suunto D4, Suunto Zoop, and [Suunto] Mosquito (collectively "Dive Computers") in the United States for personal use ("Suunto Class").

*Id.* ¶ 65. Plaintiff Bush also seeks certification of a nationwide subclass, "the Aqua Lung subclass," of individuals that purchased in the United States and for personal use a Dive Computer distributed by Aqua Lung. *Id.* ¶ 66.

## III. LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal on grounds that the court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colleges v. United States,* 217 F.3d 770, 778-779 (9th Cir. 2000). A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. When considering a

motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

**IV. MOTION TO DISMISS**

    **A. Standing**

Suunto contends that Plaintiffs lack standing because they have not sustained an injury-in-fact under Article III, the CLRA, or the UCL. (ECF No. 129-1 at 12-19). Suunto requests that the Court take judicial notice of discovery responses and discovery exchanged in this case pursuant to Federal Rule of Evidence 201. *Id.* at 13. Suunto contends that Plaintiff Huntzinger's discovery responses contradict the allegations of the SAC and establish that he has not suffered any injury. *Id.* at 14. Specifically, Suunto contends that Plaintiff Huntzinger's discovery response that he dove with the Cobra 3 after filing the complaint contradicts his allegations as to injury. *Id.* at 14-15, 17. Suunto contends that Plaintiff Huntzinger's "'feeling' that he can't rely on his replacement Cobra 3 is nothing more than a 'hypothetical' injury that may happen if his device ever malfunctions" and is insufficient to establish Article III standing. *Id.* at 17. Suunto contends that Plaintiff Bush's standing allegations are insufficient because he used the Cobra 3 "without incident, malfunction, or problem from 2009 to 2015" and that Bush purchased a D6i Dive Computer after the public filing of the instant lawsuit. *Id.* at 18. Suunto contends that the Cobra 3, D6i, and other Suunto Dive Computers are different models and the allegation in the SAC that the devices are "exactly the same" is false. *Id.* at 19.

    Plaintiffs contend that the request for judicial notice should be denied because

discovery responses are not proper subjects of judicial notice on a motion to dismiss. (ECF No. 137 at 15). Plaintiffs contend that judicial notice is not appropriate because the discovery response at issue is in dispute. Plaintiffs assert that Huntzinger "disputes Suunto's characterization of his discovery responses and their relevance to whether Huntzinger has standing." *Id.* at 16. Further, Plaintiffs contend that Huntzinger's discovery responses "further confirm his allegation that the replacement Dive Computer he received when his Cobra 3 malfunctioned is similarly defective and unsafe." *Id.* Plaintiffs contend that the allegations of the SAC sufficiently allege Article III and statutory standing because Plaintiffs were injured by purchasing falsely advertised products. *Id.* at 17. Plaintiffs contend that their reliance on a material omission in deciding to purchase the Dive Computers is sufficient to confer standing. *Id.* at 19. Plaintiffs contend that the SAC sufficiently alleges that the different types of Dive Computers are similar. *Id.* at 21.

### 1. Request for Judicial Notice

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). [U]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee*, 250 F.3d at 689 (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)).

In this case, Suunto requests that the Court take judicial notice of Plaintiff's Objections and Responses to Special Interrogatories and Plaintiff's Objections and Responses to Request for Admissions (ECF No. 129-1 at 12-13; Exhibit 1 and 2, ECF No. 129-2) pursuant to Federal Rule of Evidence 201. Plaintiffs oppose this request and assert that Suunto mischaracterizes the discovery responses. The Court declines to take judicial notice of any discovery responses in this litigation because they are not the proper subject of judicial notice. *United Safeguard Distributors Ass'n, Inc. v.*

*Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 942 (C.D. Cal. 2015), reconsideration denied, No. 215CV03998RSWLAJW, 2016 WL 2885848 (C.D. Cal. May 17, 2016) ("Discovery items such as requests for discovery and responses to requests for discovery are not proper subjects for judicial notice because they are not 'self-authenticating' and thus cannot be verified."); *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1138 (S.D. Cal. 1998) (denying a request for judicial notice of two requests for admissions and stating "[t]he court proceeds with particular caution with respect to a request for judicial notice, when, as here, it is urged so to resolve a fundamental, dispositive factual dispute"). To the extent that Suunto requests judicial notice of Suunto's Cobra 3 User Guide (ECF No. 129-2 at 2), that request is denied as unnecessary. *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

### 2. Plaintiff's Standing

In the absence of Article III standing, a court lacks subject matter jurisdiction to entertain a lawsuit. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-110 (1998). Plaintiff must establish (1) an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A plaintiff alleging a UCL claim must satisfy UCL standing requirements. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009). The UCL was revised in 2004 by Proposition 64, limiting private standing "to any 'person who has suffered injury in fact or lost money or property as a result of unfair competition.'" *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 884 (Cal. 2011) (citing Bus. & Prof. Code, § 17204, as amended by Prop. 64, as approved by voters,

Gen. Elec. (Nov. 2, 2004) § 3).

"To establish standing to bring a claim under the UCL, the consumer must allege that (1) the defendant made a false representation about a product, (2) the consumer purchased the product in reliance on the misrepresentation, and (3) he would not have purchased the product otherwise." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1109 (9th Cir. 2013) (citing *Kwikset Corp.*, 246 P.3d at 877). Proposition 64 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009).

The California Supreme Court has held that

> Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct. . . . It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision.

*Id.* (citations and internal quotation marks omitted). "[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* (citations and internal quotation marks omitted).

A plaintiff who has standing under the UCL's "lost money or property" requirement has also established standing under the CLRA. *Hinojos*, 718 F.3d at 1108 (citing *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 320 (2012) ("noting that where a plaintiff alleged an economic injury under the UCL he also adequately alleged injury under the CLRA")). "If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." *Kwikset Corp.*, 246 P.3d at 887.

In this case, Plaintiffs allege that they purchased Dive Computers but "would not have purchased or used" the Dive Computers had they known that the Dive Computers were "unsafe and unfit for their intended use[.]" (ECF No. 117 at ¶¶ 12,13). Plaintiffs

allege that "[n]one of the warnings on the product packaging or in other marketing informed . . . consumers that because of the Dive Computers' inherent defect . . . ordinary use of the Dive Computers carries a substantial risk of serious malfunction whereby the Dive Computer may quit working and/or provide incorrect information about a dive." *Id.* ¶ 59. Plaintiffs allege that Suunto "continue[d] to falsely represent that the Dive Computers will provide certain accurate information during a dive and impliedly that the Dive Computers are safe for use." *Id.* Plaintiffs allege that all Dive Computers, including replacements Dive Computers, are defective and cannot be safely used for their intended and advertised purpose. Plaintiffs allege that Suunto knew or should have known of the defects in the Dive Computers. Plaintiffs allege facts sufficient to infer that Suunto's nondisclosure was a material fact in causing Plaintiffs to purchase Dive Computers. Plaintiffs' allegations of a material nondisclosure are sufficient to infer that Plaintiffs relied on Suunto's nondisclosure in deciding to purchase the Dive Computers. *See In re Tobacco II Cases*, 207 P.3d at 39. Plaintiffs allege sufficient facts to establish standing under Article III, the UCL and the CLRA at this stage in the proceedings.

### 3. Standing On Behalf of Dive Computers Not Purchased

"In the Ninth Circuit, there is 'no controlling authority' on whether a plaintiff in a class action has standing to assert claims based on products he did not purchase." *Morales v. Unilever U.S., Inc.*, Civ. No. 2:13-2213 WBS EFB, 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012)); *see also Granfield v. NVIDIA Corp.*, No. C 11–05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); *Allen v. Similason Corp.*, No. 12CV0376, 2013 WL 2120825, at *4 (S.D. Cal. May 14, 2013) ("[W]hether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on

standing, but on an assessment of typicality and adequacy of representation."). "The majority of courts . . . hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase as long as the products and alleged misrepresentation are substantially similar." *Dorfman v. Nutramax Labs., Inc.*, No. 13-cv-873 WQH (RBB), 2013 WL 5353043, at *6 (S.D. Cal. Sept. 23, 2013) (quoting *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)). "In these . . . cases, the courts have found that analyzing the issue of standing when there are similarities between the products is better accomplished under Rule 23 at the time of class certification." *Dabish v. Brand New Energy, LLC*, No. 16CV400 BAS (NLS), 2016 WL 7048319, at *2 (S.D. Cal. Dec. 5, 2016); *see, e.g.*, *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012).

In this case, Plaintiffs allege that each Dive Computer "contains materially the same software and hardware that operates the Dive Computer's critical functions." (ECF No. 117 at ¶ 3). Plaintiffs allege that this software and hardware "is defective because it can malfunction, causing the Dive Computers to provide inaccurate information about a dive." *Id.* Plaintiffs allege that the defect "exists across all models of the Dive Computers." *Id.* ¶ 7. Plaintiffs allege that this defect makes the Dive Computers unfit for the purpose they are designed, marketed, and sold for. Plaintiffs allege sufficient facts to support an inference that Suunto's alleged practice of concealing the defects in the Dive Computers was uniform across all Dive Computers. *Id.* at ¶¶ 53-64. The Court concludes that Plaintiffs have alleged sufficient facts to avoid dismissal. Contentions regarding differences among the Dive Computers are best addressed at the class certification stage under Rule 23.

**B. Failure to State a Claim: CLRA and UCL**

Suunto contends that Plaintiffs' CLRA and UCL claims must be dismissed for failure to state a claim because Plaintiffs have failed to allege reliance on any misrepresentations or omissions by Suunto. (ECF No. 129-1 at 19). Suunto contends that Plaintiffs have failed to allege their claims with the specificity required by Rule

9(b) because the SAC fails to put Suunto on notice of the claims asserted by Plaintiffs. *Id.* at 21. Suunto contends that the SAC contains only "broad conclusory allegations of fraud" and fails to identify any misrepresentation relied on by Plaintiffs. *Id.* at 22.

Plaintiffs asserts that their "claims and corresponding allegations are not based on affirmative misrepresentations, but on Defendants' failure to inform Plaintiffs of the safety defect in the Dive Computers." (ECF No. 137 at 22). Plaintiffs contend that the SAC sufficiently alleges that Plaintiffs purchased Dive Computers as a result of Suunto's omissions and that these omissions were a material factor in influencing their decision to purchase. *Id.* Plaintiffs contend that reliance can be presumed or inferred when the omission is material. *Id.* at 23. Plaintiffs contend that their UCL and CLRA claims are not grounded in fraud and thus the heightened pleading standard of Rule 9(b) is not applicable. *Id.* at 25. Plaintiffs contend that the allegations of the SAC are sufficient to satisfy Rule 9(b). *Id.* at 25.

Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal quotation marks omitted). "To comply with Rule 9(b), allegations of fraud must be specific enought to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotation marks omitted).

"[I]n a case where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Vess*, 317 F.3d at 1104. "While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless

allege that defendant engaged in fraudulent conduct . . . . In that event, the claim is said to be grounded in fraud or to sound in fraud, and the pleading as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citations omitted). "Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)." *Id.* at 1127.

A fraud-based omission claim under the UCL and CLRA "must be contrary to a representation actually made by the defendant, or an omission of fact the defendant was obliged to disclose." *In re Sony Gaming Networks and Consumer Data Security Breach Litigation*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014). "A duty to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material fact." *Id.*

In this case, the SAC alleges that Suunto controlled the product packaging and advertising of the Dive Computers sold in the United States and that the Dive Computers were "advertised as a safe product." (ECF No. 117 ¶¶ 36-37, 61). The SAC alleges facts supporting an inference that representations about the Dive Computers were included in product packaging, Defendant Aqua Lung's website, user guides created by Suunto, a website owned by Suunto, advertising and marketing materials created by Suunto, and in-store displays. *Id.* ¶¶ 31-40. Plaintiffs allege that Suunto knew "that the Dive Computers all contain the inherent defects, malfunction, and pose a significant hazard to consumers" based on numerous reports from Aqua Lung and a Service Log which documented all repairs done on Dive Computers by an authorized repair facility. *Id.* ¶¶ 52, 45-47, 49. Plaintiffs allege that Suunto did not disclose the defect or inform consumers that the defect could result in inaccurate information about dive depth, dive time, tank air pressure, and remaining air time. *Id.*

¶ 41. The factual allegations of the SAC are sufficient to support an inference that the Suunto knew of the defects in the Dive Computers and failed to disclose the material defect to consumers while continuing to market and distribute the Dive Computers as a safe product. Further Plaintiffs allege that they purchased Dive Computers "believing [they were] safe to use during scuba dives" and that they would not have purchased the products had they known that the Dive Computers were "unsafe and unfit for its intended use." *Id.* ¶¶ 12-13. The Court has concluded that Plaintiffs allege sufficient facts to support an inference that Plaintiffs relied on Suunto's material nondisclosure for purposes of its UCL and CLRA claims. *See supra* Part IV.A.2. The Court concludes that under the requirements of Rule 9(b), the Plaintiffs have plead sufficient facts to put Suunto on notice of the claims.

**C. Failure to State a Claim: Breach of Implied Warranty**

Suunto contends that California law does not allow a breach of implied warranty claim against a manufacturer of products. Suunto contends that a plaintiff asserting breach of warranty claims must "stand in vertical contractual privity with defendant" and that there is no third-party beneficiary exception to the privity requirement. (ECF No. 129-1 at 23-24). Suunto further contends that even if the Court determines a third party beneficiary exception to the privity requirement exists, it cannot be extended to allow a consumer to sue a manufacturer "merely because he is an end user of the product." *Id.* at 24.

Plaintiffs concede that Huntzinger "does not have an implied warranty claim against Suunto because he did not purchase his Dive Computer from an authorized retailer." (ECF No. 137 at 26 n.2). However, Plaintiffs contend that Plaintiff Bush sufficiently alleges an implied warranty claim. Plaintiffs contend that there is a third-party beneficiary exception to the vertical privity requirement. Plaintiffs contend that Bush is a third-party beneficiary of "the implied warranty made between Suunto as the manufacturer and Aqua Lung as the distributor, and among Aqua Lung and the ultimate retail sellers where Bush and the other Class members purchased their Dive

Computers." *Id.* at 29.

"Under California Commercial Code section 2314, ... a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir.2008) (citation omitted). "A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Id.* "Some particularized exceptions to the rule exist." *Id.* In *Gilbert Fin. Corp. v. Steelform Contracting Co.*,145 Cal. Rptr. 448 (Ct. App. 1978), a California appellate court determined that pursuant to California Civil Code section 1559, the owner of a building could bring a breach of implied warranty claim as a third-party beneficiary to a contract between a contractor and a subcontractor, despite a lack of privity. *Id.* at 450 n.5. Relying on this decision, some district courts have determined that consumers can assert implied warranty claims, despite a lack of privity, as third party beneficiaries of agreements between the manufacturer and retailer. *See, e.g.*, *Roberts v. Electrolux Home Prod., Inc.*, No. CV 12-1644 CAS VBKX, 2013 WL 7753579, at *10 (C.D. Cal. Mar. 4, 2013) ("*Gilbert* is best interpreted to establish an exception to the privity requirement that applies when a plaintiff is the intended beneficiary of implied warranties in agreements linking a retailer and a manufacturer, and therefore a lack of privity does not bar plaintiff's implied warranty claims."); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983 (N.D. Cal. 2014) (applying the third party beneficiary exception to plaintiffs who bought a car from a dealership and then sued the manufacturer for breach of implied warranty). *But see In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017) ("Although it appears that the majority of district court decisions to consider the question have held that a consumer who purchased a product from a retailer can invoke the third party beneficiary exception to bring an implied warranty claim against the manufacturer, this Court cannot square that outcome with *Clemens*.").

"[W]here a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim

for the implied warranty's breach." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010). "Under California Civil Code § 1559, a third party beneficiary can enforce a contract made expressly for his benefit . . . the only requirement is that the party is more than incidentally benefitted by the contract." *Cartwright v. Viking Industries, Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008). "Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary 'must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary.' " *Schauer v. Mandarin Gems of California, Inc.*, 23 Cal. Rptr. 3d 233, 239 (Ct. App. 2005 ) (quoting *California Emergency Physicians Medical Group v. PacifiCare of California*, 111 Cal. Rptr. 3d 583 (Ct. App. 2003)).

In this case, the SAC alleges that Plaintiff Bush purchased a Suunto Cobra 3 dive computer from Sport Chalet and later purchased a Suunto D6i dive computer "to replace the unrepairable and defective Cobra 3." (ECF No. 117 at ¶13). "Aqua Lung entered into distribution agreements with select retailers for the sole purpose of distributing the Dive Computers so that they could be sold from the retailers. As part of those distribution agreements, Aqua Lung impliedly warranted that the Dive Computers are reasonably safe, effective and adequately tested for their intended use and that they are of merchantable quality." (ECF No. 117 at ¶ 102). The SAC alleges, "Plaintiff Bush and members of the Aqua Lung Subclass, as purchasers of the Dive Computers, were the intended beneficiaries of the distribution agreements between Aqua Lung and retailers of the Dive Computers." *Id.* at ¶ 103. These factual allegations are specific to Defendant Aqua Lung's distribution agreements with retailers. With respect to Suunto, Plaintiff alleges that Suunto "entered into a distribution agreement with Aqua Lung for the purpose of marketing and distributing the Dive Computers in the United States for sale to consumers." *Id.* ¶ 21. Plaintiffs fail to allege sufficient facts to support a reasonable inference that Plaintiff Bush is an

1 | intended third party beneficiary to any contract involving Suunto. The motion to
2 | dismiss the breach of implied warranty of merchantability claim as to Suunto is granted.

## V. MOTION TO STRIKE THIRD PARTY AMENDED COMPLAINT

On July 5, 2017, Aqua Lung filed a document titled "Aqua Lung America, Inc.'s First Amended Third-Party Complaint Against Suunto Oy." (ECF No. 124). Aqua Lung seeks to bring claims for equitable indemnity, comparative equitable indemnity, implied contractual indemnity, breach of implied warranty of merchantability, and declaratory relief against Suunto. (ECF No. 124).

Suunto filed a motion to strike the Amended Third Party Complaint on the grounds that "Suunto Oy is a defendant to the underlying and operative Second Amended Complaint filed by Plaintiffs, and any claim by Aqua Lung against Suunto Oy must be treated as a crossclaim rather than a third-party complaint." (ECF No. 128 at 2). Suunto requests that the Court strike the First Amended Third-Party Complaint with leave to Aqua Lung to file its crossclaims or in the alternative, "treat Aqua Lung's third party pleading as a cross-claim and adjust the caption to reflect the proper status of all parties." (ECF No. 128-1 at 5).

Aqua Lung filed a Notice of Non-opposition. (ECF No. 131). Aqua Lung states "Aqua Lung does not oppose Suunto's request that the Court issue an order that the First Amended Third-Party Complaint be treated as a Cross-Complaint, and the docket be modified accordingly. However, in the event that the Court strikes the First Amended Third-Party Complaint and orders Aqua Lung to file a Cross-Complaint, Aqua Lung respectfully requests that the Court also order Suunto to file an answer to such Cross-Complaint within 14 days of service pursuant to Rule 15(a)(3)." (ECF No. 131 at 4).

Pursuant to the agreement of Suunto and Aqua Lung, the motion to strike the First Amended Third-Party Complaint is granted and Aqua Lung is granted leave to refile the document as a cross-claim.

## VI. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Suunto is granted with respect to the breach of implied warranty of merchantability against Suunto and denied in all other respects. (ECF No. 129).

IT IS FURTHER ORDERED that the Motion to Strike the Third Party Amended Complaint is GRANTED. (ECF No. 128). The document filed as "First Amended Third-Party Complaint Against Suunto" (ECF No. 124) is stricken. The Court grants Aqua Lung leave to refile the document as a cross-claim within ten (10) days of the date this Order is issued.

DATED: January 8, 2018

**WILLIAM Q. HAYES**
United States District Judge